UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case Number 15-20361

v.                                               Honorable David M. Lawson

KEVIN BRIAN KEYS,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Kevin Keys has filed a motion supplemented by counsel asking the Court to reduce his sentence to time served and commit him to home confinement under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Keys began serving his 240-month prison sentence in November 2015 for transporting a minor across state lines with intent to engage in prostitution. Keys argues that a sentence reduction is justified by his medical conditions (obesity, type 2 diabetes, and asthma) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. However, Keys has been inoculated against the virus, and the infection rate at his Bureau of Prisons (BOP) facility is quite low. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

In August 2014, Kevin Brian Keys transported a 16-year-old girl from Michigan to Minnesota and financially supported himself on the proceeds from her commercial sex acts. He took sexually explicit photos of the victim and used those images to arrange prostitution dates over Facebook. Keys knew the victim was only 16 years old at the time and that she had been reported

missing.  When the victim became very ill with an infection, Keys abandoned her and was subsequently arrested in California.

On August 10, 2015, Keys pleaded guilty under a Rule 11 plea agreement to Count 2 — transportation of a minor with intent to engage in prostitution.  On November 25, 2015, the Court sentenced Keys to 240 months in prison.

Keys began serving his sentence on March 3, 2016 and is scheduled to be released on September 26, 2032.  He presently is confined by the BOP at USP Atwater, a high-security facility in California that houses about 950 inmates.   He is 43 years old and suffers from prediabetes, obesity (body mass index [BMI] around 34), asthma, and shortness of breath.  Although he was prescribed an albuterol inhaler, he told BOP staff in September 2020 that "he hasn't really used his inhaler that much."  In his supplemental brief, Keys contends that in late May 2021, his prediabetes progressed to type 2 diabetes, but he did not attach any corroborating medical records.

On September 8, 2020, Keys submitted a request for compassionate release to the Warden USP Atwater, which was denied on September 17.  On April 5, 2021, he filed a *pro se* motion for compassionate release in this Court.  The defendant filed a supplemental brief with the assistance of counsel on June 2, 2021.  If released from prison, Keys intends to live with the mother of his youngest child in Lancaster, California.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates at USP Atwater and two active cases among staff.  To date, 362 inmates and 63 staff members have tested positive and have since recovered.  No one affiliated with the prison died from the virus.  Keys received his first dose of the Moderna vaccine on April 14, 2021.  It appears that he has become fully inoculated, as defense counsel represents that his second injection was scheduled for four weeks later.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Keys relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does

not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP.  *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further.  In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'"  984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."  *Id.* at 519-20.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative."  *Ibid.*  However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion.  *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government does not dispute that Keys's request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Keys argues that his pre-existing medical conditions consisting of type 2 diabetes, obesity (BMI of around 34), and asthma render him vulnerable to complications from the highly contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Id.* at *2 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), *People Who Are At Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that obesity, moderate-to-severe asthma, and diabetes are factors that seriously elevate the risk of complications for anyone who is infected with the COVID-19 disease. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (May 13, 2021) https://bit.ly/3vlpWcH.

Here, Keys contends that he is "morbidly obese," is asthmatic, and that his prediabetes developed into type 2 diabetes. Although Keys suffers from asthma, his medical records do not support a finding that it is moderate or severe. Medical Records, ECF No. 48, at PageID.303, 322

(noting that Keys suffers from "asthma, unspecified" and that he "state[d] that he hasn't really used his inhaler that much."). Moreover, Keys's assertion that he is "morbidly" obese is contradicted by the record, which indicates that his BMI hovers around 34, which the CDC considers Class 1 obesity. Medical Records, ECF No. 48, PageID.293; *Defining Adult Overweight & Obesity*, Ctrs. for Disease Control and Prevention (April 28, 2021) https://bit.ly/3xadzkB. Regardless, the CDC considers ordinary obesity (BMI over 30) a risk factor for severe COVID-19 infection. *People with Certain Medical Conditions*, *supra.*

But even accepting as fact that Keys suffers from type 2 diabetes, obesity, and moderate asthma, the recognition that an inmate has one or more serious and certain medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release. That is because another obviously and highly pertinent consideration is the probability that the defendant is likely to contract an infection again from the coronavirus in his present situation, which in this case appears to be remote. Recent reports indicate that the probability of infection at USP Atwater, although once relatively high, now is very low, with no active cases among inmates and only two among staff. Further, even as the incidence of infection at Atwater has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid and robust deployment of newly available vaccines, which so far have been administered fully to 152 staff and 477 inmates at the prison. The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds. Federal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases).

Moreover, Keys received his first dose of the Moderna vaccine in April 2021 and his second dose, scheduled about four weeks later, likely has been administered by now. Although vaccinations may not provide perfect protection from COVID-19, they are among the best known methods of preventing infection and severe complications from the disease. *CDC Real-World Study Confirms Protective Benefits of mRNA COVID-19 Vaccines*, Ctrs. for Disease Control & Prevention (Mar. 29, 2021), https://bit.ly/2QOfr2A ("COVID-19 vaccines are highly effective in preventing SARS-CoV-2 infections in real-world conditions among . . . groups [that] are more likely than the general population to be exposed to the virus."); *Vaccine Effectiveness*, Ctrs. for Disease Control & Prevention (May 10, 2021), https://bit.ly/34STqU1 (recognizing that "no vaccine is 100% effective," but observing that vaccines "are effective at preventing COVID-19" or developing severe illness in "real world conditions."). The CDC estimates that a single dose of the Moderna vaccine reduces the chances of infection by 80 percent and a second dose reduces the chances to over 90 percent. *Ibid*. Thus, the few COVID-19 cases at Atwater in combination with the fact that Keys received both doses of the Moderna vaccine undercuts any medical basis for finding that extraordinary and compelling reasons exist for his release.

III.

Keys has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion and supplemental motion for compassionate release (ECF No. 38, 50) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 15, 2021